**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

JANICE STALLWORTH,          )
                                      )
                Plaintiff,        )
                                      )
v.                                 )           Civil Action No.  2:05cv385-WHA
                                      )           (WO)
                                        )
SOURCECORP,               )
                                      )
                Defendant.     )

**MEMORANDUM OPINION AND ORDER**

## I. INTRODUCTION

This case is before the court on a Motion for Summary Judgment (Doc. #21) and a Motion to Strike (Doc. # 36) filed by the Defendant, Image Entry of Alabama, Inc. d/b/a SourceCorp Business Process Solutions.[1]

The Plaintiff, Janice Stallworth, brings claims of race discrimination under Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 1981 (Count I), and a claim of conspiracy to interfere with civil rights pursuant to 42 U.S.C. § 1985 (2) (Count II).

For the reasons to be discussed, the Motion to Strike is due to be DENIED as moot and the Motion for Summary Judgment is due to be GRANTED in part and DENIED in part.

## II.  SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

---

[1] The Defendant represents that it has been incorrectly named as SourceCorp in the Plaintiff's Complaint.

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." <u>Id.</u> at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. <u>Id.</u> at 322-324.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" <u>Id.</u> at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. <u>See Anderson v. Liberty Lobby</u>, 477 U.S. 242, 255 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

2

The summary judgment rule is to be applied in employment discrimination cases as in any other case. Chapman v. A1 Transport, 229 F.3d 1012, 1026 (11th Cir. 2000)(en banc).

## III. FACTS

The submissions of the parties establish the following facts, construed in a light most favorable to the non-movant:

The Plaintiff, Janice Stallworth, is an African American woman who was hired as a data entry operator at Image Entry of Alabama, Inc. in Georgiana, Alabama in 2000. Data entry operators enter data from source documents into a computer.

In 2001, SourceCorp Business Process Solutions purchased all Image Entry operations. In 2004, Image Entry of Alabama, Inc. d/b/a SourceCorp Business Process Solutions ("the Defendant")[2] began processing Blue Cross and Blue Shield documents in Georgiana. These documents were more difficult to process than earlier documents had been.

In June 2004, Stallworth was placed on a performance improvement plan, along with other employees, for failure to meet productivity requirements. She was given a specific production goal to meet by the end of a six week period. She was told that she had to be at 20.7 documents, 90% production, for BXALH01 data[3] by the end of the six week period.

The Defendant maintains that Stallworth, and five other employees, failed to meet the production goal. Stallworth disputes that this is the case. All six employees, both African

---

[2] Because the parties have referred to the Defendant as both "Image Entry" and "Sourcecorp," in an attempt to avoid confusion, the court will refer to "the Defendant" rather than Image Entry of Alabama, Inc. d/b/a SourceCorp Business Process Solutions or any shortened form of that full name.

[3] Data entry for Blue Cross and Blue Shield involved both BXALH01 and BXALH02 data.

American and white, who the Defendant states failed to meet the production goal were terminated in August 2004.  Charles Combs ("Combs"), Senior Operations Manager for State Government, made the termination decision.  Four employees who had been placed on improvement plans, but who did meet the production goal, were retained.  These four employees were all African American women.

The Defendant had a practice of allowing data entry operators who could not meet the company's keying requirements to be eligible for hire into clerical positions.  In the meetings with the six terminated data entry operators, Combs and Tim White ("White"), Operations Manager for Georgiana, informed all of the six terminated employees, except Stallworth and Dottie Griffin-Marsh ("Griffin-Marsh"), that some temporary clerk positions were going to be created in the future for which they could apply.  Both Stallworth and Griffin-Marsh abruptly left their termination meetings so that Combs and White were unable to inform them about the positions which would be available at a later date.  Griffin-Marsh was informed about the position at a later point during the day on which she was terminated when she returned to apologize for her behavior.

Ten Remittance Clerk positions became available.  These positions were not advertised. White called one or more of the white employees who had been terminated to let them know that the positions were now available, and the three white employees who had previously been terminated were re-hired into Remittance Clerk positions in October 2004.  In total, ten Remittance Clerk positions were filled by six white women and four black women.

On March 16, 2005, Richard Bledsoe, a SourceCorp Vice President, sent a memorandum to employees stating that the employees were not to talk to plaintiffs' lawyers

involved in lawsuits with the company.  White posted the memorandum on the company bulletin board.  Bledsoe issued a clarifying memorandum on July 1, 2005, stating that the first memorandum was intended to address inquiries regarding the company's restatement of earnings.  Stallworth alleges that this memorandum represents a conspiracy to interfere with civil rights.

## IV. <u>DISCUSSION</u>

Where, as here, a plaintiff seeks to prove intentional discrimination on the basis of race under Title VII and § 1981 by using circumstantial evidence of intent, the court applies the framework first set out by the United States Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  Under this framework, the plaintiff must establish a prima facie case of discrimination.  <u>McDonnell Douglas</u>, 411 U.S. at 802.  After the plaintiff has established a prima facie case of discrimination, the burden of production is placed upon the employer to articulate a legitimate nondiscriminatory reason for its employment action.  <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248, 254 (1981).  The plaintiff may seek to demonstrate that the proffered reason was not the true reason for the employment decision "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  <u>Id.</u> at 256; <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1528 (11th Cir. 1997).  A plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 147 (2000).

Stallworth brings claims for unlawful termination, failure to hire, conspiracy to interfere

5

with civil rights under 42 U.S.C. § 1985(2), and disparate impact.  The court will address each of these in turn.

Disparate Treatment Claims

Stallworth claims that she was terminated from her employment and denied re-hire into a clerical position because of her race.  Stallworth has, therefore, asserted both a termination and a failure to hire claim.  The court turns first to the termination claim.

1. Termination on the Basis of Race

To establish disparate treatment on the basis of race a plaintiff must show the following: (1) she is a member of a protected class; (2) she was qualified for her job; (3) she suffered an adverse-employment action; and (4) she was treated less favorably than a similarly situated individual outside of her protected class. Maynard v. Bd. of Regents of Div. of Univs. of Florida Dep't of Educ., 342 F.3d 1281, 1289 (11th Cir.2003)

The Defendant admits that Stallworth can establish, for purposes of the motion for summary judgment, three of the four elements of the prima facie case.  The Defendant contends, however, that Stallworth cannot demonstrate that similarly-situated employees outside of her protected class were treated more favorably than she, because Stallworth was treated identically to the three similarly-situated white employees.  The Defendant presents evidence that all six of the employees who were terminated failed to meet the terms of their performance improvement plans.  The four employees who were retained were African American women.  Combs Corrected Declaration at ¶¶ 26, 32.  Obviously, the four employees who were retained because they made their production goals are not persons outside of Stallworth's protected class because both they and she are African American.  Because the only white employees identified were

6

terminated just as Stallworth was, she has pointed to no similarly-situated person outside of her protected class who was treated more favorably than she, and has no prima facie case of discrimination.

Stallworth attempts to create an issue of fact on this point by disputing that she failed to meet the terms of her performance improvement plan.  Again, because she has not pointed to a white employee placed on an employment plan who was retained, this issue of fact would not establish a prima facie case of discrimination.  Even considering Stallworth's evidence, however, she has not shown that there is a material issue of fact on this point.  Stallworth interprets her Performance Score Card to say that at the end of her six week improvement plan, for the period of July 25, 2004 through July 31, 2004, she had reached 21.13 documents per hour, or 91.8% of her goal for BXALH01 data.  See Plaintiff's Exhibit 16.  The Defendant responds, however, that although it is undisputed that Stallworth met her productivity goals for the week ending July 31, 2004, that information is irrelevant because the week ending July 31, 2004 was outside of the performance improvement plan and was the seventh week after Stallworth was placed on the plan.

In his Second Declaration, Combs states that although he did not meet with the operators until June 15, he had already drafted the improvement plans and had a human resources representative sign off on them the week before.  Second Declaration of Combs at ¶ 5.  According to Combs' Second Declaration, the first week of the improvement plan ended June 19, and the sixth week ended on July 24, 2004.  Id. at ¶ 11.  Combs states that regardless of the employees' performance in the seventh week, he "had already made the decision to terminate their employment at this time."  Id. at ¶ 25.

After having been given an opportunity by the court to file an additional brief responding to new evidence, Stallworth has argued that Combs' newest declaration states, in essence, that he terminated employees on terms not reflected in the performance improvement plans because he considered BXALH02 data during the sixth week of the plan, rather than BXALH01 data, which was the data specified in the performance improvement plan. Stallworth argues that to evaluate BXALH01 data, as dictated by the performance improvement plan, Combs should have considered the performance during the seventh week. Stallworth does not, however, present evidence to create a question of fact as to whether Combs actually made the termination decision based on the six weeks as he has defined them. Furthermore, all six of the terminated employees, not just African American employees, were evaluated based on BXALH02 data in the fifth and sixth week. Id. at ¶ 17.[4]

As has been well-established in this circuit, an employer may terminate an employee for "a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." Nix v. WLCY Radio/Rahall Commc'ns., 738 F.2d 1181, 1178 (11th Cir. 1984). Even if Combs' decision to terminate the six white and African American employees was based on BXALH02 data in the sixth week, and therefore, purportedly based on information not contemplated by the performance improvement plans, there is no evidence that Combs made this decision in a way which affected persons outside of Stallworth's protected class in a more favorable manner. Instead, all six employees failed to meet production

---

[4] One of the statements subject to the Motion to Strike filed by the Defendant is a statement that other black employees also met the goals of their performance improvement plans and were terminated. For the reasons discussed, this statement relates to performance after the termination decision had been made, and therefore, is irrelevant, the court has not considered it, and the Motion to Strike is due to be DENIED as moot.

goals based on BXALH02 data in the sixth week and all six of them, both white and African

American, were terminated.  Therefore, the court concludes that no issue of fact which may exist

relevant to this claim is material, and that summary judgment is due to be GRANTED as to the

termination claim.

### 2.  Failure to Hire on the Basis of Race

Stallworth also contends that she was discriminated against because the Defendant did

not hire her into a clerical position after her termination, but did re-hire the three white

employees who had also been terminated when she was.

To establish a prima facie case of failure to hire, a plaintiff must show that (1) she is a

member of a protected class, (2) she applied for and was qualified for a job for which the

employer was seeking applications, (3) despite her qualifications, she was rejected, and (4) after

this rejected, the position remained open or was filled by a person not within the protected class.

E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1273 (11th Cir. 2002).

The Defendant has argued, based on Underwood v. Perry County Comm'n, 431 F.3d 788,

794 (11th Cir. 2005), that Stallworth cannot demonstrate that the person hired into the position

was outside of the protected class.  In Underwood, a plaintiff claimed that she was the victim of

gender discrimination because the employer did not hire her and had hired men.  The Eleventh

Circuit reasoned that although a plaintiff does not have to identify the successful applicant, she

does have to establish that the successful applicant was not in her protected class.  Id. at 794.

Because both women and men were hired by the employer, and the plaintiff did not identify

which of the filled positions was the position she claimed she should have been given, the court

reasoned that there was no way to know whether the job the plaintiff sought was filled by a man

9

or a woman, so that she failed to establish a claim of gender discrimination. Id. at 794-95.[5]

The court declines to extend Underwood to the facts in this case.  In Underwood, there was an issue of proof because the plaintiff applied for any available position, and several were filled, but she failed to demonstrate that a position she applied for was filled with someone outside of her protected class.  Here, as will be more fully discussed below, the Remittance Clerk positions were not posted as vacancies.  Plaintiff's Exhibit 14 at page 13.[6]  Instead, the Defendant told five of the six terminated employees on the day they were terminated that the clerical positions would become available at a later date, and White called employees who he said had expressed interest in the positions when the positions became available. Stallworth was not told that the positions would become available nor was she contacted when they were available.  The court does not find, therefore, under the circumstances of this case, that the holding in Underwood would require the non-movant to identify the available position into which she contends she should have been hired.  It appears to the court that the better way to look at the failure to hire claim in this case is that there were six employees, three white and three African American, who were similarly situated in that they had been terminated from their former positions for performance reasons, and that the three white employees were re-hired into

---

[5] Stallworth's only response to this argument is that Janice Colvin identified her fellow remittance clerks as all white but one.  See Colvin Dep. page 20-22.  The Defendants respond to this evidence by arguing that it does not refute the evidence of the number of African American and white remittance clerks who were hired at the relevant time, but only is relevant to the clerks who worked with Colvin at the time of her deposition.  The court need not address this issue as the court concludes that Underwood is inapplicable for the reasons discussed.

[6] An answer to a Plaintiff's Interrogatory states that generally vacancies at the Georgiana location are posted with the Alabama State Employment Service, but that no positions were posted in 2004.

available positions, while Stallworth was not.[7]

With regard to the element of the prima facie case that the plaintiff must have applied for a position, the Defendant argues that Stallworth cannot demonstrate that she applied for or expressed interest in an available position. Stallworth's position is that she need not show she applied for the available position in this case. Stallworth contends, citing Roberts v. Gadsden Mem. Hosp., 835 F.2d 793, 798 (11th Cir. 1988), that the employer in this case should be charged with knowledge of her interest because it adopted a secretive decision process.

The Defendant points out that Stallworth refused to sign the termination notice, Stallworth Dep. at pages 263-64, "kind of threw a pen," and walked out. White Dep. at page 15: 6-5. The Defendant states that this behavior meant that Combs and White did not have the opportunity to inform Stallworth of the positions which might be opening in the future, and that her employer did not know that Stallworth had an interest in obtaining additional employment with the Defendant after she abruptly left the office.[8] According to Combs, other terminated employees were informed that positions would be opening. Corrected Declaration of Combs ¶ 38. Dottie Griffin-Marsh also was not informed about the positions at her termination meeting because she also had left the meeting angrily, but she returned later in the day to apologize and was informed at that time. Id. at ¶ 40.

---

[7] Evidence of the races of other employees who were hired may be relevant to the issue of intent at trial, but does not, in this court's view, make Underwood applicable in this case.

[8] The Defendant also points out that Stallworth said in her deposition that she would no longer like to work at the Defendant because the kind of data entry work she enjoyed has changed. There is no evidence, however, that she expressed this thought to decision makers or anyone else employed by the Defendant.

11

Stallworth testified in her deposition, however, as follows:

Q: Who did you apologize to?
A. I apologized to Tim, told him if I done wrong.
* * *
Q: What did you specifically say to him?
A: Pertaining to the job, if I done anything wrong. Because I still wanted a job.
Q: And then what did he say?
A: He didn't say anything.

Stallworth Dep. at page 266: 5-14.  Viewing the evidence in a light most favorable to the

non-movant, Stallworth also apologized to White, but was not informed about the positions

becoming available at that time.  Although the difference of treatment between Stallworth and

Griffin-Marsh is not evidence of discrimination because Griffin-Marsh is also African American,

the difference does create a question of fact as to whether there were any requirements which

Stallworth had not satisfied in order to be informed about the positions which would become

available.

Of even greater significance to this inquiry is the fact that the decision maker for the re-

hiring, White, has testified that the three terminated white employees who were re-hired

expressed interest in being rehired.  White states that the white employees who were terminated,

Diane Burkett ("Burkett"), Charlene Talley ("Talley"), and Janice Colvin ("Colvin"), called

periodically to ask questions, including asking about whether the new positions had been

created.  Declaration of White at ¶¶ 7, 8.  White also states that because they expressed interest,

he called one or more of these employees when the jobs became available.  Id. at ¶10.

Stallworth cites deposition testimony which contradicts White's statements.  Burkett

testified that when she called to ask questions, she did not mention coming back to work, and

White did not tell her they would be hiring.  Burkett Dep. at page 15: 3-10.  She stated that she

found out about the opening because White called her. Id. at page 13: 19-23.  Janice Colvin states in her deposition that she had not called to express an interest in returning to work with the Defendant, and that she was surprised when White called her.  Colvin Dep. at 11:10-12:21. Talley testified that the call from White letting her know that there was a job opening was a complete surprise.  Talley Dep. at page 13:16-18.  Therefore, all three employees testified that they learned of the position because White called them and they had not expressed interest in the position.  In addition, Stallworth testified in her deposition that she called the Defendant to ask whether the Defendant was hiring and was told that the Defendant was not accepting applications, although she does not remember when she called.  Stallworth Dep.at page 266:16-267:6 and 268:6-9.

The court concludes that there is at least a question of fact as to whether Stallworth was required to express interest in a position in order to be considered for the position, and also as to whether Stallworth in fact expressed this interest, so that Stallworth has satisfied this element of the prima facie case.

The next issue raised by the Defendant is whether Stallworth has adequately demonstrated that she was qualified for the position at issue.  The Defendant concedes that Stallworth was technically qualified, but argues that because Stallworth has been receiving federal disability benefits, she is not qualified for a remittance position because she is not physically able to work.  The Defendant argues that although her disability determination is not a per se bar to her claim, she cannot produce evidence that she was qualified.

Stallworth responds, by pointing to an employee's deposition testimony, that the persons who were re-hired into the Remittance Clerk positions were initially hired into part-time

positions.  Diane Burkett Dep. at pages 16-17.   She states that she could have worked part-time within the applicable regulations regarding disability. The Defendant does not address this point in its Reply.  Based on the evidence currently before the court, viewed in a light most favorable to the non-movant, the court is not persuaded that although she was otherwise technically qualified, the mere fact that Stallworth has been receiving disability payments necessarily means as a matter of law that Stallworth was not qualified for the position at issue.

The court now turns to the reasons articulated for Stallworth not being re-hired when the white employees were re-hired into Remittance Clerk positions.  The Defendant states in brief that Stallworth was not re-hired for a Remittance Clerk position because she reacted inappropriately in her termination meeting and because she never applied for or expressed interest in the position. The Defendant, however, has not cited to any evidence from White, the decision maker, that Stallworth was not re-hired into a Remittance Clerk position for the reasons stated.

Although the burden placed upon the Defendant under the McDonnell Douglas framework is only a burden of production and is very light, a defendant must show that the articulated reason was actually a reason considered by the decision maker.  Turnes v. AmSouth Bank, 36 F.3d 1057, 1061 (11th Cir. 1994).  This showing requires evidence. See Burdine, 450 U.S. at 257 (to satisfy its intermediate burden, an employer must "produce admissible evidence which would allow the trier of fact to conclude that the employment decision had not been motivated by discriminatory animus." ).  A "defendant cannot meet its burden merely through an answer to the complaint or by argument of counsel." Id. at 256 n. 9.  Because the court has not been cited to testimony by White as to why he did not re-hire Stallworth, it does not appear to

14

the court that the Defendant has met its burden in this case.  The court will, however, consider the evidence which has been provided to support the identified reasons to determine whether Stallworth has sufficiently create a question of fact to establish pretext.

The Defendant points to Combs' Declaration which states that Stallworth's behavior at her termination meeting made her ineligible for re-hire. Combs Corrected Declaration at ¶ 36. Stallworth, however, cites White's deposition for the proposition that she was not ineligible for re-hire.  White's testimony on this point is as follows:

> A.  Janice could have applied.  I would have–I would have–We would have had to discussed (sic) her situation because of the way that she left her termination.
> * * *
> Q.  Would you have considered Ms. Stallworth eligible for remittance clerk positions, pending a discussion about her behavior?
> A.  Yes. Uh-huh.
> * * *
> Q.  Sure.  Whatever happened at the termination meeting, when she says no and drops the pen, did not render her ineligible for employment with the company, but it's something you'd want to discuss?
> * * *
> A.  That's correct.

White Dep. at page 22:7-10, page 23: 1-17.

At the pre-trial hearing conducted in this case, the attorney for the Defendant interpreted the statement in White's deposition testimony that "We" would have to discuss the situation to mean that White and Combs would have to discuss the situation, so that Stallworth would not have been hired because Combs considered her to be ineligible for re-hire.  White's testimony is ambiguous on this point.  Given the lack of evidence that White relied on this reason in making the re-hiring decision, and the evidence that White did not consider Stallworth ineligible for re-hire, the court concludes that there is a question of fact as to whether Stallworth's behavior at her termination meeting truly was a reason for the employment decision.

The only evidence cited to the court as to the second identified reason, that Stallworth did not apply for or express interest in the position, is White's statement that the white employees who were hired made clear to him that they were interested in being re-hired.  White Declaration at ¶¶ 9, 10.  As discussed above, however, there is a disputed issue of fact with regard to whether these employees actually expressed interest in the position.  There is also evidence that Stallworth expressed interest in available positions.  Therefore, the court also finds that there is a question of fact as to whether Stallworth's lack of expressed interest truly was a reason for the failure to re-hire her.  The court concludes, therefore, that even if the Defendant has properly met its burden of production and articulated non-discriminatory reasons, viewing the evidence in a light most favorable to the non-movant, Stallworth has established pretext as to the reasons offered by the Defendant.  Summary judgment is, therefore, due to be DENIED as to the failure to hire claim.

Title VII Disparate Impact Claim

Although Stallworth has brought a disparate impact claim in this case, she asserted only claims of intentional discrimination in her EEOC charge.[9]  A plaintiff must timely file a charge of discrimination under Title VII with the EEOC so that the EEOC has an opportunity to investigate alleged discriminatory practices and to perform its role of promoting conciliation efforts.  Gregory v. Georgia Dep't of Human Resources, 355 F.3d 1277, 1279 (11th Cir. 2004). Judicial claims are allowed if they merely amplify or more clearly focus the allegations in the EEOC complaint.  Id.  Therefore, a plaintiff's judicial complaint is limited by the scope of the

---

[9] Stallworth does not attempt to assert a disparate impact claim pursuant to § 1981, which requires proof of discriminatory intent.  See Ferrill v. Parker Group, Inc., 168 F.3d 468, 472 (11th Cir. 1999).

16

EEOC investigation which can reasonably be expected to grow out of a charge of discrimination. Id. at 1280.

The Defendant points out that there is no mention in Stallworth's EEOC charge of "disparate impact," or any reference to any neutral policy of the employer which has had a disproportionate effect on a protected class of employees.  Stallworth argues that because two other African American women also filed EEOC charges and the Defendant justified its actions for all three former employees by referring to the same employment practice, the EEOC's investigation of the disparate treatment claims would have led to an investigation of possible disparate impact claims.

This court has previously determined that where an EEOC charge did not mention the words "disparate impact," did not refer to any facially neutral policy, and only referenced intentional discrimination, "[i]t is not reasonable to expect the EEOC to investigate any neutral employment policy when all that is raised is intentional discrimination." Lett v. Reliable Ruskin, 2005 WL 2128041, No. 1:05CV479-A at *3 (M.D. Ala. Aug. 29, 2005) (quoting Butler v. Matsushita Commc'n Ind. Corp. of U.S., 203 F.R.D. 575, 582 (N.D. Ga. 2001)).   The mere fact that separately-filed EEOC charges may have referred to the same employment practice does not appear to this court to be a sufficient basis for a determination that it would have been reasonable for the EEOC to investigate the employment practice as having a disparate impact, when only disparate treatment was alleged in the EEOC charge.  Accordingly, summary judgment is due to be GRANTED as to the disparate impact claim asserted in the Complaint in this case.[10]

_____

[10]  Alternatively, the Motion for Summary Judgment is due to be GRANTED as to the merits of this claim. Stallworth says that only African American employees were affected by the new production control system because only African American employees remain terminated

17

Conspiracy Claim

Stallworth claims that the Defendant violated 42 U.S.C. § 1985 by issuing a warning letter to all employees about lawsuits against the company which told them not to talk to attorneys.[11]

The Defendant takes the position that none of the elements of a private cause of action under 42 U.S.C. § 1985 are met in this case, including that Stallworth has not shown that she was harmed in any way.  The court begins with the issue of harm to the plaintiff.

Stallworth argues that she need not demonstrate harm because she still has a private right of action even if the conspiracy was not successful.  In so arguing, she relies in part on <u>United States v. Jimenez Recio</u>, 537 U.S. 270 (2003), which is a criminal case in which the court concluded that a conviction should be upheld even though the government frustrated the object of a criminal conspiracy.  That case is too factually and legally distinct to be of value in the analysis of the instant case.

It is clear that a plaintiff asserting a private right of action under § 1985(2) must have suffered some harm. <u>See</u> 42 U.S.C. § 1985.  Although the Supreme Court, in a case pointed to by Stallworth, <u>Haddle v. Garrison</u>, 525 U.S. 121, 126 (1998, has clarified that the harm suffered

---

and the terminated white employees had only ten weeks of separation from employment.  The four employees who were retained after being placed on performance improvement plans were African Americans.  The three white employees were re-hired.  While summary judgment is due to be denied on the intentional discrimination in re-hiring claim, that is based on questions of fact surrounding White's actions in re-hiring, not on any neutral employment practice.

[11] One of the statements subject to the Motion to Strike filed by the Defendant relates to this claim and the Defendant's accounting methods.  Because summary judgment is due to be GRANTED for the grounds discussed, the court has not considered the statement identified in the Motion to Strike, and the Motion to Strike is due to be DENIED as moot.

by the plaintiff need not be a constitutionally protected property interest, the Court has not held

that there is no requirement that the plaintiff have suffered harm.  To the contrary, in <u>Haddle</u>, the

Court expressly stated the following: "[a]s § 1985 demands, [the petitioner] also alleged that he

had been 'injured in his person or property' by the acts of the respondents in violation of

§1985(2)." <u>Id.</u> at 123.  The Court explained that the harm suffered by the plaintiff in that case

was sufficient under § 1985 just as it would have been under traditional tort law.  <u>Id.</u> at 126-27.

Therefore, the requirement of a showing of harm remains after <u>Haddle</u>.

      In the instant case, Stallworth has not pointed to any evidence of harm she suffered as a

result of any alleged conspiracy.  Stallworth says in her brief merely that the memorandum

"could be intimidating to potential witnesses," Plaintiff's Brief at page 38, and points out that

Bledsole states in his testimony that he thinks the memorandum may have been somewhat

successful because he got phone calls from employees.  Bledsole Dep. at page 22:1-2.  As the

Defendant points out, however, Stallworth states in her deposition that she is not aware of any

person who has said they refused to testify or any person who refused to cooperate in the EEOC

investigation as a result of the memorandum.  Stallworth Dep. at pages 299-300.  She further

testified that she has not experienced any action that hindered her in bringing this lawsuit as a

result of the Bledsoe memorandum.  <u>Id.</u> at 306:1-4.  In the absence of any evidence of harm to

Stallworth, summary judgment is due to be GRANTED as to this claim.

## V. <u>CONCLUSION</u>

      For the reasons discussed, it is hereby ORDERED as follows:

1.  The Motion to Strike (Doc. #36) is DENIED as moot.

2.  The Motion for Summary Judgment (Doc. #21) is GRANTED in part and DENIED

in part.  Judgment is entered in favor of Image Entry of Alabama, Inc. d/b/a SourceCorp

Business Process Solutions and against Janice Stallworth on the disparate treatment termination

claim, the disparate impact claim, and the 42 U.S.C. § 1985 claim.  The case will proceed to

trial only on Janice Stallworth's disparate treatment failure to hire claim.

Done this 30th day of June, 2006.


/s/ W. Harold Albritton
W.  HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE